Leroy **JACKSON**, Jr., Appellant,

v.

Leah **JACKSON**, Appellee.

No. 5573.

District of Columbia Court of Appeals.

Argued Feb. 8, 1971.

Decided June 10, 1971.

Robert A. Harris, Washington, D. C., with whom James A. Mitchell, Washington, D. C., was on the brief, for appellant.

Anival J. Grillo, Washington, D. C., for appellee.

---

1. N.J.S. Cum.Supp. 2A :4–30.1 et seq. As enacted in the District of Columbia, *see* D.C.Code 1967, § 30–301 et seq.

2. The court treated a pending motion for declaratory judgment as a motion to

Before HOOD, Chief Judge, and KELLY and PAIR, Associate Judges.

KELLY, Associate Judge:

Appellant, Dr. Leroy Jackson, married Leah Jones Jackson in Richmond, Virginia, on September 6, 1958. At the time of the marriage the appellee-wife had a four-year-old child, Vicki, born of a previous marriage. The husband accepted Vicki as part of the family and treated her as if she were his own daughter. Both prior to and during the marriage there were discussions between the Jacksons about Vicki's adoption by the husband. At first there appear to have been financial barriers to the adoption, but thereafter the husband was reticent to proceed because he thought that the marriage was deteriorating and felt that, should there be a divorce, Vicki's adoption would possibly subject him to a greater financial burden.

One child, Linda, was born of the Jackson marriage. In September, 1967, the parties separated, with the husband remaining in the District of Columbia and, sometime later, the wife and children moving to New Jersey. There the wife found employment but when she could not meet her expenses brought a support action against the husband under the Uniform Reciprocal Support Act.[1] She applied for support only for Linda and herself but was allowed at trial to amend her complaint to include a claim for Vicki's support.[2]

The trial court made extensive and detailed findings of fact and conclusions of law. On appeal the husband challenges the validity of the ruling that under this

amend the complaint. The New Jersey court having made no finding concerning the husband's duty to support the step-child, the amendment was allowed only because the parties were present in court, were cognizant of the issue (it having been raised by means of discovery), and no rights of the parties would be prejudiced thereby.

court's decision in Fuller v. Fuller, D.C. App., 247 A.2d 767 (1968), aff'd, 135 U.S. App.D.C. 353, 418 F.2d 1189 (1969), he had a duty to support Vicki during the marriage because of the existence of an *in loco parentis* relationship as developed by the evidence. The husband also argues that if a duty to support does in fact exist, the trial court's support award of $775 a month for Vicki and Linda was excessive.[3] We reverse.

There can be no serious dispute on the facts of this case that after the marriage the husband assumed a parental relationship to the stepdaughter and therefore stood *in loco parentis* to her. In describing this type of relationship we said in *Fuller* that

> [t]he status assumed by one *in loco parentis* is "a somewhat nebulous legal relationship of a temporary character dependent on the intention of the party assuming the obligations of a parent." The continuance of that relationship is a matter which lies within the will of one standing *in loco parentis* and may be abrogated by him at any time. It differs from adoption in that it is strictly temporary in nature, rather than permanent. Upon divorce, where the child is no longer under the stepfather's care, his duty of support terminates in the absence of a showing that he intends to continue as one *in loco parentis*. * * * (Footnotes omitted.) 247 A.2d at 770.

Most other authorities agree that absent an intention that it continue, an *in loco parentis* relationship usually terminates upon divorce.[4] Similarly, there is authority that such relationship terminates upon a separation of the husband and wife unless the party standing *in loco parentis* to the child means that it should continue.[5] We therefore look to the record for evidence of the husband's intention to continue an *in loco parentis* relationship to Vicki during the period of separation from his wife and family.

The trial judge found that since the separation the husband has continued to pay Vicki's tuition, with supporting expenses; that there has been some communication between the stepchild and the husband during this period although he has seen her infrequently, and that according to his testimony the husband feels a moral obligation to Vicki and will continue to support her willingly without an order of court.

The fact is, however, that in this action the husband has not consented that an order be entered against him for Vicki's support and although he feels a moral obligation to contribute in some measure to her support, he vigorously contests the court's authority to enter such an order. At this point it is clearly his intention to no longer continue as one *in loco parentis* to the stepchild. The offer to contribute voluntarily to Vicki's support to the best of his ability "does not demonstrate that he intends to continue permanently in the role of parent." Fuller v. Fuller, *supra,* 247 A. 2d at 770. We conclude therefore that it was error for the court to order the husband to continue to support the stepchild pending dissolution of the marriage.[6]

The wife, seemingly aware that the husband's *in loco parentis* argument was per-

3. There was no award of support to the wife.

4. *See e. g.*, Clevenger v. Clevenger, 189 Cal. App.2d 658, 11 Cal.Rptr. 707, 90 A.L.R. 2d 569, 576 (1961); McDowell v. McDowell, 378 S.W.2d 814, 815–816 (Ky. 1964); 67 C.J.S. Parent and Child § 80 b (1) (1950).

5. Amadeo v. Amadeo, 64 N.J.Super. 417, 166 A.2d 397 (1960); D. v. D., 56 N.J. Super. 357, 153 A.2d 332 (1959), cited in Fuller v. Fuller, D.C.App., 247 A.2d 767 (1968), aff'd, 135 U.S.App.D.C. 353, 418 F.2d 1189 (1969); Wood v. Wood, 166 Ga. 519, 143 S.E. 770 (1928). *Cf.* Falzo v. Falzo, 84 N.J.Super. 343, 202 A.2d 192 (1964).

6. An action for divorce, filed by the husband, is pending in the trial court.

suasive, devotes her brief to a discussion of equitable estoppel.[7] The claim that the husband was estopped to deny a duty to support his stepchild was before the trial court on conflicting evidence. No findings of fact or conclusions of law were made in respect thereto and consequently it is not before us on appeal.

Inasmuch as the court made a lump sum award of support for both Linda and Vicki, we are compelled to reverse and remand for the court to redetermine the amount of support the husband should pay for his natural child, an obligation which he cannot disavow.

So ordered.

---

7. See Clevenger v. Clevenger, supra note 4; Fuller v. Fuller, supra note 5.